THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | 7:05CV5026 |
| Plaintiff, | ) ) | |
| vs. | ) ) | **MEMORANDUM AND ORDER** |
| TODD J. DELAY, JACK McCAFFERY, and JOHN D. LAWLESS, | ) ) ) | |
| Defendants. | ) | |

This matter is before the court on two motions filed by the plaintiff, the Commodity Futures Trading Commission (CFTC): (1) a motion for partial summary judgment regarding affirmative defenses of equitable estoppel asserted by two of the defendants, Jack McCaffery and John Lawless (filing 154); and (2) a motion to dismiss Lawless from the action in exchange for his testimony at trial (filing 242). I will grant the motion to dismiss and will deny, as moot, the motion for partial summary judgment as it pertains to Lawless.[1]  As to McCaffery, however, the motion for partial summary judgment will be granted.

The CFTC charges that the defendants manipulated the feeder cattle futures market, and it seeks injunctive relief, disgorgement of profits, restitution, and civil penalties under the Commodity Exchange Act, 7 U.S.C. § 13a-1.  In particular, it claims that McCaffery violated Section 9(a)(2) of the Act, which makes it unlawful for "[a]ny person to manipulate or attempt to manipulate the price of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, . . . or knowingly to deliver or cause to be delivered for transmission through the mails or interstate commerce by telegraph, telephone, wireless, or other

---

[1] I am <u>not</u> entering a final judgment pursuant to Rule 54(b).

means of communication false or misleading or knowingly inaccurate reports concerning crop or market information or conditions that affect or tend to affect the price of any commodity in interstate commerce, . . ..." 7 U.S.C.A. § 13 (a)(2) (West Cum. Supp. 2005).

The CFTC alleges that McCaffery reported cattle sales to the United States Department of Agriculture (USDA) that he knew to be sham transactions engineered by the defendant Todd Delay for the purpose of artificially increasing the price of October 2003 feeder cattle futures contracts. The USDA included these sales in its public cash market feeder cattle report, which was then used by the Chicago Mercantile Exchange (CME) to calculate its feeder cattle index. It is alleged that McCaffery made four false reports at the request of Delay.

Delay was the branch manager for Rosenthal Collins Group (RCG), a registered futures commission merchant, in Columbus, Ohio. He also bought and sold cattle and marketed cattle feeding investments to clients. McCaffery is the president of North Platte Feeders (NPF), a feedlot located in North Platte, Nebraska. NPF was a futures customer of Delay and it maintained hedge accounts at RCG for its customers. Delay was a customer of NPF and he fed cattle at NPF for himself and his investors.

The CFTC alleges that on October 21, 2003, McCaffery falsely reported sales of 606 and 124 head of cattle that never took place, and sales of 666 and 1,598 head of cattle that actually occurred on different dates, outside the applicable reporting period. NPF was the buyer in each of these transactions or purported transactions, and the sellers were all associated with Delay.

McCaffery contends that the CFTC cannot claim that he violated Section 9(a)(2) because the USDA and the CME: (1) allow for the reporting of sales that involve future deliveries, and do not provide a mechanism for "unreporting" those

-2-

sales that fail to close; (2) do not require any records to be maintained by persons making reports, which are entirely voluntary; and (3) use only a limited volume of sales data for preparing their published reports and indexes. He also complains that the USDA does not train or give guidance to cattlemen from whom it solicits sales data. Essentially, McCaffery takes the position that the CFTC, "after the fact, [is] trying to change the rules on what was a reportable transaction to shore up infirmities in the CME cattle index, which infirmities were known to the CFTC and CME." (Filing 192, at 21.)

While some or all of these factors may be relevant to the jury issue of whether McCaffery violated Section 9(a)(2), they do not prevent the CFTC from claiming that the violations occurred. "To succeed on a claim of equitable estoppel against the government, a plaintiff must not only prove all the elements of equitable estoppel, but also that the government committed affirmative misconduct." Charleston Housing Auth. v. U.S. Dept. of Agric., 419 F.3d 729, 739 (8th Cir. 2005) (citing Rutten v. United States, 299 F.3d 993, 995 (8th Cir.2002)). See also Clason v. Johanns, 438 F.3d 868, 872 (8th Cir. 2006) (any claim of equitable estoppel against the government requires proof that the government committed affirmative misconduct). McCaffery's evidence concerning alleged infirmities in the USDA reporting system and the CME feeder cattle index is insufficient to satisfy his "heavy burden of proof." See id. (assurances that defendant allegedly received from FSA officer were, at most, the product of negligence). Also, although McCaffery claims that the CFTC knew of the alleged infirmities, he has not demonstrated that any conduct by the USDA or the CME might be attributed to the CFTC so as to equitably estop it from bringing an enforcement action.

McCaffery additionally claims that the CFTC itself is guilty of misconduct, and that it denied him due process, because it took a sworn statement from him without making it known that he was a target of the CFTC investigation and without informing him of his legal rights. The undisputed evidence shows that the CFTC

subpoenaed McCaffery to testify "in connection with a private investigation In the Matter of Todd Delay." (Filing 155-2, at 2-3.) Accompanying the subpoena was a written notice explaining, among other things, that:

- The Commission's principal purpose in soliciting information from you is to determine whether any person has violated, is violating, or is about to violate the Commodity Exchange Act or the rules and regulations thereunder.

- Disclosure of information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

- You may be accompanied, represented, and advised by counsel. He or she must be and attorney-at-law . . . . Your counsel may be present and may advise you before, during, and after your testimony.

- If you are not accompanied by counsel and decide at any time during the proceeding that you wish to be accompanied, represented, or advised by counsel, please so advise the Commission representative taking your testimony. The proceeding will then be adjourned to afford you the opportunity to make necessary arrangements.

- Information you provide may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency. In accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, you may refuse to provide information that may tend to incriminate you or otherwise subject you to a fine, penalty, or forfeiture, by invoking the Fifth Amendment.

(Filing 155-2, at 6, 8-9.)

McCaffery's statement was taken in Chicago on September 14, 2004, by a CFTC attorney, David A. Terrell.  A CFTC investigator, Hugh J. Rooney, was also present.  The written transcript shows that the following exchange occurred at the beginning of the interview:

> Q      (by Terrell)   Let the record reflect you're not represented by counsel here today, is that right?

> A      (by McCaffery)  Yes.

> Q      You're her on your own?

> A      Should I have been?

> Q      Again, I think we probably had this discussion before, but I never advise witnesses whether or not they want to bring an attorney. That's their own discretion. . . .

> . . .

> Q      I'm going to show you what we've marked as exhibit number 1.  Is that a copy of a subpoena that you received in the mail?

> A      Yes.

> Q      And that's a subpoena for your testimony and that subpoena is the, you're appearing pursuant to that subpoena today, is that right?

> A      That's correct; yes.

> Q      Did you have any questions about the subpoena?

> A      No.

Q      All right.  We'll attach this as, to exhibit 1.  That is a packet of information that goes out with the subpoena.  Did you get that packet?

A      Yes, I did.

Q      Did you read it and do you have any questions?

A      I read it and I have no questions.

Q      Okay.  That is the information that gives you your rights and obligations as a commission witness in a commission investigation and, well, no questions at all on any of the information there.  Okay.

. . .

Q      I want to go back for a second.  I should have said something and I'll do it now.  You asked earlier do I need an attorney and I said I don't tell witnesses whether or not they need an attorney.

I should make it clear that you have the right at any time in this proceeding if you say, Hey, I need an attorney, you let me know and we'll take a break and let you find an attorney, okay?

A      Okay.

(Filing 155-3, at 5, 7-8.)

I find no evidence of any affirmative misconduct on the part of the CFTC. While McCaffery admittedly was a suspect in the CFTC's investigation when his sworn statement was taken,[2] the CFTC did not have an obligation to inform him of

_____

[2] Investigator Rooney testified in his deposition that the CFTC was suspicious of McCaffery.  (Filing 193-2, at 11.)  He also testified that if McCaffery had asked whether he was a suspect or a target in the investigation, the response would have been to show McCaffery the order of investigation, which in this case named only

this fact.[3]  In any event, McCaffery was warned that any information he provided could be used against him in an administrative, civil, or criminal proceeding, and he was repeatedly told that he had the right to have an attorney present during questioning.  The circumstances under which McCaffery's testimony was provided to the CFTC may well be relevant to the trial of this matter, but they do not establish that the statement should be excluded, or that the case against McCaffery should be dismissed, based on a defense of equitable estoppel.

Accordingly,

IT IS ORDERED that:

1.    Plaintiff's motion to dismiss (filing 242) is granted, and, accordingly, Plaintiff's action against the defendant John D. Lawless is dismissed without prejudice.

2.    Plaintiff's motion for partial summary judgment (filing 154) is granted in part and denied in part, as follows:

_____

Delay.  (Id.)  McCaffery was shown the order of investigation prior to his statement being taken, but there is no evidence that he ever directly inquired whether he was a suspect or target of the investigation.  (Filing 155-3, at 6.)

    [3] In support of his due process argument, McCaffery cites United States v. Stringer, 408 F. Supp. 2d 1083 (D.Or. 2006), in which indictments for securities fraud and conspiracy were dismissed because the government's "egregious misconduct" in permitting an extensive civil Securities and Exchange Commission investigation to proceed while actively concealing from defendants the fact that criminal prosecutions were already contemplated and that United States attorneys were actively involved behind the scenes in the SEC investigation.  Because that case deals with a criminal prosecution, it is inapposite.

      a.      The motion is granted with respect to the affirmative defense of equitable estoppel alleged by the defendant Jack McCaffery.

      b.      The motion is denied without prejudice, as moot, with respect to the affirmative defense of equitable estoppel alleged by the defendant John D. Lawless.

April 17, 2006.          BY THE COURT:

                            s/ *Richard G. Kopf*
                            United States District Judge